# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PATRICIA TRAISTER,** | Case No. 6:16-cv-1717-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,**[1] Commissioner of Social Security, | |
| Defendant. | |

John E. Haapala, Jr., 401 E. 10th Ave., Suite 240, Eugene, OR 9401. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney; United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Jeffrey E. Staples, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Patricia Traister seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Supplemental

Security Income ("SSI"). Because the Commissioner's decision was based on the proper legal

standards and the findings were supported by substantial evidence, the decision is AFFIRMED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

## STANDARD OF REVIEW

The District Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Molina v. Astrue*, 673 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* at 1110-11 (quotation omitted). The Court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.* at 1110. The Court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### A.      Plaintiff's Application

Ms. Traister filed application for SSI on September 21, 2012, alleging disability as of June 1, 2001. AR 107, 109. Born in November 1961, Ms. Traister was 39 years old on the alleged disability onset date and 53 at the time of the ALJ hearing. AR 60, 109. She speaks English, attended school through the tenth grade and earned a GED, and also attended community college and earned a credential as a certified nurse's assistant ("CNA"). AR 63-64. She alleges disability due to: depression, degenerative disc disease, fibromyalgia, coronary obstruction and pulmonary disease ("COPD"), and posttraumatic stress disorder ("PTSD"). AR 109. The Commissioner denied her application initially and upon reconsideration, and she

requested a hearing before an Administrative Law Judge ("ALJ"). AR 107, 139. After an

administrative hearing, the ALJ found Ms. Traister not disabled in a decision dated March 12,

2015. AR 9-21. The Appeals Council denied Ms. Traister's subsequent request for review on

June 30, 2016. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner,

and Ms. Traister sought review in this Court.

## B.     The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§

404.1520, 404.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially

dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series

of questions:

1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R. §
       416.920(a)(4)(i). This activity is work involving significant mental or
       physical duties done or intended to be done for pay or profit. 20 C.F.R. §
       416.910. If the claimant is performing such work, she is not disabled
       within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the
       claimant is not performing substantial gainful activity, the analysis
       proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's
       regulations? 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination
       of impairments is "severe" if it significantly limits the claimant's physical
       or mental ability to do basic work activities. 20 C.F.R. § 416.921(a).
       Unless expected to result in death, this impairment must have lasted or be
       expected to last for a continuous period of at least 12 months. 20 C.F.R. §
       416.909. If the claimant does not have a severe impairment, the analysis

ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. § 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.     The ALJ's Decision**

The ALJ performed the sequential analysis. At step one, the ALJ found Ms. Traister had not engaged in substantial gainful activity since September 21, 2012, the alleged onset date. AR 11. At step two, the ALJ concluded that Ms. Traister had the following severe impairments: reactive airway disease; COPD, carpal tunnel syndrome, right; right-sided C5-C6 radiculopathy in the cervical spine; right shoulder chronic rotator cuff tendinitis status post-acromioplasty and subacromial bursectomy; left shoulder strain; anxiety disorder; and depressive disorder. *Id.* At step three, the ALJ determined that Ms. Traister did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 13.

The ALJ next assessed Ms. Traister's  RFC and found that she could perform light work except that she must do all of her lifting with both hands; no independent lifting with her right hand; no more than occasional overhead reaching with the left arm and no overhead reaching with the right arm; no more than frequent handling and fingering with right hand; cannot climb ladders, ropes, or scaffolds; is unable to crawl; limited to no more than frequent balancing, stooping, kneeling, and crouching; must avoid even moderate exposure to airborne irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; must avoid workplace hazards such as operation control of moving machinery, hazardous machinery, and unprotected heights; can understand and carry out simple instructions; and is limited to no more than occasional contact with the general public, co-workers, and supervisors. AR 15.

At step four, the ALJ found that Ms. Traister could not perform her past relevant work. AR 19. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Traister could perform jobs that exist in significant numbers in the national economy, including mail clerk, information router, and order filler. AR 20. Accordingly, the ALJ found Ms. Traister not disabled. *Id.*

## DISCUSSION

Ms. Traister contends the ALJ made the following legal errors in evaluating her case: (1) improperly assessing the credibility of her symptom allegations; and (2) improperly evaluating the medical opinions of two treating physicians of record.

## A. Plaintiff's Symptom Testimony

There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281).[2] It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2; *see also Trevizo v. Berryhill*, 862 F.3d 987, 1000 n.5 (9th Cir. 2017). The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence and individual's statements about the intensity, persistence, and limiting effects of symptoms statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to

---

[2] The Commissioner's position is that the "substantial evidence" legal standard, rather than the clear-and-convincing legal standard, applies for rejecting a claimant's symptom allegations. Def.'s Br. 2 n.1. However, the Ninth Circuit unequivocally requires the ALJ to provide specific, clear and convincing rationales in order to reject a claimant's subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

treatment, prior work record, efforts to work, daily activities, and other information concerning

the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical

source statements, considering how consistent those statements are with the claimant's

statements about his or her symptoms and other evidence in the file. *See id.* at \*6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons

for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may

not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d

at 883.

At the hearing, Ms. Traister testified that her depression keeps her from wanting to get

out of bed in the morning, and causes crying and seeking to avoid others. AR 39-40. Ms. Traister

testified that she has physical impairments that severely limit her functioning. For example, she

explained that she left her job as a hospital unit secretary because she could no longer sit for six

hours, due to pain in her neck and shoulder. AR 33-34. Ms. Traister further described pain and

chronic cramping in her fingers and thumbs, and that she spent most of the day lying down.

AR 44. She reported her neck pain was the most significant, although she described the pain

as 4/10 on medications. AR 42-43. She felt she could stand for about an hour at a time, and

stated that she can no longer walk around the block. AR 43.

The ALJ acknowledged that although Ms. Traister's physical and mental symptoms

allegations were supported in part, he found that the record as a whole reflected Ms. Traister was

not as limited as she alleged. AR 16. Regarding physical limitations, the ALJ found that

objective findings were consistently normal. *Id.* The ALJ also found that Ms. Traister's physical

symptoms had improved, and were controlled with medications. *Id.* Regarding mental

limitations, the ALJ found Ms. Traister's depression medications were effective. *Id.* The ALJ

found that despite Ms. Traister's allegation of worsening symptoms, her medical providers

observations of her were generally normal. *Id.* Further, the ALJ found that despite Ms. Traister's

allegation of memory impairment, objective testing reflected only mild cognitive impairment.

AR 17.

Ms. Traister contends the ALJ erroneously discredited her symptom testimony by cherry-

picking isolated evidence supporting her non-disability decision, rather than considering the

record as a whole. *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Ms,

Traister argues that psychiatric testing by Kacy Mullen, Ph.D., demonstrated "severe depression,

anxiety, and chronic pain," that the doctor noted her mood and affect were depressed, and that a

screening score indicated severe depression. Pl.'s Br. 17. Ms. Traister further argues that she was

unable to spell "world" backwards or perform serial 7's as part of a "mini mental status

examination" in December 2013. AR 273.

Ms. Traister, however, does not identify any functional limitations arising from her

depressive disorder that the ALJ omitted from the RFC assessment. Further, the ALJ addressed

Dr. Mullens' December 2014 evaluation, noting that the doctor described Ms. Traister as "well

oriented, with normal thought process, with normal concentration, with clear speech, with

normal appearance and grooming, with an appropriate affect, and with normal insight," despite

her "depressed mood." AR 16. The ALJ's findings are supported by the record, including the

opinion of treating physician Dr. Lichtenstein, who felt Ms. Traister had "no reduction in her

work-related mental activities such as to understand and remember." AR 271, 450-51. Indeed,

the ALJ found that Ms. Traister's anxiety and depressive disorders were "severe" at step two of

the evaluation process, and limited her to no more than occasional contact with the general

public, co-workers, and supervisors. AR 11, 15. Addressing Ms. Traister's concentration allegation, the ALJ limited her to understanding and carrying out only simple instructions. AR 15, 16-17. As such, the Ms. Traister has not identified any error.

Ms. Traister also contends that ALJ did not properly consider nerve conduction studies which "demonstrated an objective basis for her diagnosis of chronic cervical radiculopathy, upper arm pain, and CTS." Again, however, Ms. Traister does not identify any error: the ALJ discussed the nerve conduction study ("EMG") in her decision, and noted that it reflected "no evidence of neuropathy." AR 16, 411. Ms. Traister's claim that testing showed reduced grip strength in January 2013 is inconsistent with the record. Pl.'s Br. 17; AR 16, 276 ("grip strength is 5/5 bilaterally"). Ms. Traister further argues that "the ALJ erred by requiring plaintiff to provide an objective basis for her pain." Pl.'s Br. 18. Although Ms. Traister recites relevant case law in support, her argument is unavailing, as her arguments stop short of applying the law to the facts. For example, Ms. Traister argues that a claimant need not produce objective medical evidence of pain or fatigue, but does not identify what limitations arising from pain or fatigue the ALJ failed to address. *Id.* Similarly, Ms. Traister argues that she endorsed joint pain and headaches, and exhibited restricted range of motion in the cervical spine, but does not identify why that evidence renders the ALJ's RFC deficient. *See* Pl.'s Reply 4-5.

The ALJ is solely responsible for determining the credibility of symptom allegations, and resolving conflicts and ambiguities in the medical record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). After the ALJ determines a medically determinable condition exists, the ALJ must evaluate the severity of the allegedly limiting symptoms by examining the record as a whole, including daily activities; location, frequency, duration, and intensity of pain; aggravating symptoms; and the impact and effectiveness of treatment modalities. 20 C.F.R.

§ 416.929(c)(1)-(3); SSR 16-3p, at *7. Here, the ALJ provided a thorough review of the medical evidence, and specifically identified numerous instances where Ms. Traister's objective medical evaluations showed normal functioning despite her pain complaints. AR 16-18. Thus, although Ms. Traister argues the ALJ failed to account for her pain allegations, she fails to demonstrate what evidence, had it been "properly" accounted for, supported additional functional limitations. As such, Ms. Traister has failed to identify any harmful error. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Rather, the ALJ properly evaluated Ms. Traister's symptom allegations and found her significantly limited in several functional areas, which were reflected in the RFC. AR 16.

Ms. Traister, in response to the Commissioner's defense of the ALJ's decision, also contends that the ALJ erroneously considered instances where Ms. Traister failed to follow her prescribed treatment, and that her symptoms improved with treatment. Pl.'s Reply 2, 3. For example, Ms. Traister contends that "the instances of non-compliance or declining to follow a recommended course of treatment are relatively few," and that "[w]hile the ALJ did not clearly err in citing plaintiff's declining to see a [physical therapist] as a reason to discredit her, the reason does not rise to the level of clear and convincing." Pl.'s Reply 3. To the contrary, failure to seek treatment without a valid explanation is a clear-and-convincing reason to discredit a claimant's symptom allegations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Further, the ALJ also provide clear, specific citations to the record where Ms. Traister reported that her medications were helpful, effective, stable, or made her pain manageable. AR 16. Although Ms. Traister offers an alternative interpretation of the record, the ALJ's interpretation was specific, reasonable, and firmly grounded in the record; accordingly, the Court affirms. *See Batson*, 359

F.3d at 1196 (where evidence exists to support more than one rational interpretation of the evidence, the Court is bound to uphold the ALJ's interpretation).

**B.        Medical Opinion Evidence**

Ms. Traister argues that the ALJ improperly rejected opinions provided by her treating physicians, Puneet Bandi, M.D., and Roy Lichtenstein, M.D. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2007). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Additionally, the ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with a treating physician's opinion, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited

subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADLs. *Tommasetti*, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so; an ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

1.    ***Dr. Bandi***

Dr. Bandi provided a February 2014 opinion in which he opined Ms. Traister would be unable to sit or stand for more than 45 minutes at a time for up to two hours total; would need four unscheduled breaks, for up to 20 minutes at a time, per day; would be limited to lifting less than ten pounds rarely, along with postural and manipulative limitations; and was incapable of even low-stress work and would have four or more absences each month. AR 17, 454-57. The ALJ accorded Dr. Bandi's opinion "little weight," noting the assessed physical limitations were inconsistent with the objective medical record, and that the assessed mental limitations were inconsistent with Ms. Traister's ADLs and social functioning. AR 17.

Ms. Traister argues that the ALJ erred in finding Dr. Bandi's restrictions inconsistent with the objective medical evidence. Ms. Traister contends her complaints were substantiated by a September 2012 EMG, which was interpreted as showing mild right carpal tunnel syndrome, chronic right C5-6 radiculopathy, and no evidence of peripheral neuropathy. Pl.'s Br. 9. However, the ALJ considered the EMG results in assessing Dr. Bandi's opinion, finding the EMG revealed "mild carpal tunnel syndrome on the right . . . . and chronic radiculopathy on the right." AR 17. The ALJ acknowledged Ms. Traister's right arm radiculopathy in assessing her RFC, finding her limited to less than the full range of light work: she could only lift or carry 10 pounds frequently and 20 pounds occasionally, but could lift only using both hands; no overhead reaching with the right arm; and no more than frequent handling and fingering with the right

hand. AR 15. Although Ms. Traister argues that the EMG findings are consistent with the more limited lifting restrictions set forth by Dr. Bandi, she does not establish that the ALJ's interpretation of the record was not rational. Indeed, the ALJ properly summarized the facts and conflicting medical evidence, stated her interpretation, and made findings, as required. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Here, the ALJ chose to accord more weight to the lifting restrictions set forth by consultative examining physician Brian Dossey, M.D., who administered objective clinical tests and determined Ms. Traister was capable of lifting 20 pounds occasionally and ten pounds frequently due to her right-sided radiculopathy. AR 17, 276. Thus, although Ms. Traister offers an alternative interpretation of the import of the EMG study, the ALJ's interpretation was rational and based on substantial evidence in the record. *Garrison*, 759 F.3d at 1010 (citing *Batson*, 359 F.3d at 1193). Thus, the Court finds no error.

The ALJ provided other specific examples of where Dr. Bandi's assessed limitations were inconsistent with the medical record. The ALJ found that the medical record consistently reflected normal examinations. For example, although Dr. Dossey noted restricted right shoulder range of motion ("ROM"), his ultimate lifting restriction assessment was consistent with the ALJ's. AR 275-76. Further, on examination, Dr. Dossey found normal grip strength, normal thumb opposition, no diminution of hand function with repetition, and intact sensory exam, and "5/5 in upper and lower extremities bilaterally" for "motor strength/muscle bulk and tone." AR 276. Although Ms. Traister argues the ALJ erred because Dr. Dossey also found "neck pain with movement and "diminished grip strength," consistent with "diagnosis of chronic cervical pain with radiculopathy and right shoulder pain," Dr. Dossey's conclusions were generally consistent with the ALJ's, although the ALJ did not feel that Ms. Traister's manipulative restrictions involved both hands. AR 17, 276. Indeed, the ALJ assessed more restrictive right-

handed lifting and reaching. limitations than Dr. Dossey, despite Dr. Dossey's findings of right-sided neck and shoulder pain which Ms. Traister argues the ALJ failed to properly consider. *See* AR 17.

The ALJ also discounted Dr. Bandi's opinion that Ms. Traister would be unable to sit or stand for more than 45 minutes at a time for up to two hours total. AR 17. The ALJ found those restrictions inconsistent with the objective evidence, and instead accorded weight to Dr. Dossey's opinion that Ms. Traister could sit, stand, or walk for up to six hours per workday. *Id.* Ms. Traister argues that, as a treating physician, Dr. Bandi's opinion warranted greater weight as a treating physician than Dr. Dossey, an examining physician. Def.'s Br. 11. Ms. Traister's other treating physician, Dr. Lichtenstein, however, opined that Ms. Traister's health conditions did not affect her ability to sit, walk, or stand. AR 271. Thus, the ALJ's finding regarding sitting, standing, and walking was consistent with the opinions of treating physician Dr. Lichtenstein and Dr. Dossey, while Dr. Bandi's opinion was inconsistent. As such, Ms. Traister's argument fails. The ALJ is final arbiter with respect to resolving ambiguities in the medical evidence, and is charged with determining credibility and resolving the conflicts in the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). Thus, regarding sitting, standing and walking limitations, the ALJ allowably accorded greater weight to the opinions of treating physician Dr. Lichtenstein and examining physician Dr. Dossey than that of Dr. Bandi. AR 17-18.

The ALJ also provided a legitimate reason to disregard Dr. Bandi's opinion regarding Ms. Traister's mental limitations: namely, that Dr. Bandi's conclusions were inconsistent with Ms. Traister's ADLs and social functioning. AR 17. Dr. Bandi opined that due to depression, Ms. Traister would be off-task more than 25% of the time because of associated inattention and

concentration deficits, was incapable of even low-stress work, and would miss work more than four days per month. AR 457. The ALJ, however, found that Ms. Traister reported her medications for depression were working well in March 2013. AR 16, 323. The ALJ acknowledged that Ms. Traister reported worsening symptoms thereafter, but also found that despite her allegations, her treating physicians observed her mood and affect to be generally normal. AR 17, 284 (normal mood, affect, behavior; June 2013), 319 (normal mood and affect, July 2013), (normal mood and affect, September 2013), 437 (normal affect, judgment, and behavior; January 2014), 430 (normal mood, affect, behavior, judgment, and thought content; March 2014). As the ALJ observed, Ms. Traister's interactions with her treatment providers, in addition to her children and grandchildren, belied her allegations of severe difficulty in social functioning. AR 14.

The ALJ also noted that although Ms. Traister was mildly limited in ADLs, she was able to complete chores around the house such as cooking and cleaning. Ms. Traister also indicated she was able to do her own grooming, drive a car, shop for herself, pay her own bills, and manage her own savings account. AR 14. Additionally, the ALJ noted that, based on a mental status examination, Ms. Traister had no more than moderate difficulty maintaining concentration, persistence, and pace. AR 14. The ALJ allowably accounted for the limitations in the RFC by translating the findings into specific functional limitations; namely, that Ms. Traister retained the capacity to understand and carry out only simple instructions, and was limited to no more than occasional contact with the general public, co-workers, and supervisors. AR 15. Thus, contrary to Ms. Traister's assertion, the ALJ provided specific evidence from the record in support of her findings regarding of social functioning and ADLs, and provided legitimate reasons to adopt the State agency consulting psychologists' opinion rather than Dr. Bandi's. AR 18.

Separately, Ms. Traister asserts that the ALJ failed to properly consider the factors set forth in the regulations in rejecting Dr. Bandi's opinions. Indeed, the regulations require that even where a physician's opinion is not well-supported or inconsistent with other medical evidence, the ALJ must still consider the frequency and length and of the treating relationship, as well as the "nature and extent" of the relationship. 20 C.F.R. § 416.927(c)(2)(i), (ii). Ms. Traister, however, does not demonstrate how consideration of the frequency and treatment relationship of Dr. Bandi would have affected the ALJ's decision to accord the opinion diminished weight.

For example, Ms. Traister does not identify any medical records completed by Dr. Bandi in support of the assessed limitations, aside from the medical opinion he provided in February 2014. Dr. Bandi indicated that at the time of his opinion, he had only been treating Ms. Traister for one year, with a frequency of every 3-4 months; thus, it appears the treatment relationship consisted only of 3-4 meetings at the time the opinion was drafted. AR 454. Review of the record reflects that Ms. Traister did not establish care with Dr. Bandi until March 28, 2014, one month *after* the he provided the opinion. AR 428 ("52 y.o. female has come to establish care with me."). As such, there is no indication that, at the time of his assessment, Dr. Bandi was bringing a "unique perspective" to the table, nor was there any evidence of "the [type of] treatment the [treating medical] source has performed or ordered from specialists and independent laboratories." *See* 20 C.F.R. § 416.927(c)(2). Indeed, the record contains no chart notes authored by Dr. Bandi before his February 2014 opinion, let alone any evidence Dr. Bandi performed any physical examinations in support of his conclusions. 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *see also Bray v.*

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ need not accept any medical opinion that is brief, conclusory, or inadequately supported by clinical findings").

Further, even if the record supported a more extensive treatment relationship prior to February 2014, the ALJ was allowed to consider whether Dr. Bandi's limitations were consistent with the record as a whole, and the ALJ found it was not. 20 C.F.R. § 416.927(c)(4). Accordingly, even if the ALJ did not expound upon the length and nature of Dr. Bandi's treatment relationship, Ms. Traister has not identified why such consideration would have been consequential to the weight the opinion was accorded. As such, any error was harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**2. *Dr. Lichtenstein***

Ms. Traister assigns error to the evaluation of Dr. Lichtenstein's December 2012 opinion, which noted that she was "limited in her ability to lift or carry objects with her right arm, and travel extensively . . . [and] her conditions and medications may reduce her capacity to sustain concentration, persist, socially interact, and adapt." AR 271. Dr. Lichtenstein further opined that, "she has been unable to engage in any gainful employment, and will not be able to do so in the foreseeable future . . . ." *Id.* As discussed above, the ALJ credited the portion of Dr. Lichtenstein's opinion which stated Ms. Traister was *not* limited in her ability to sit, walk, stand, hear, or speak. AR 17, 217. The ALJ also noted that Dr. Lichtenstein's opinion was probative to a degree, as it was "based on a treating relationship with the claimant and there is evidence in the record to support his statements regarding her right arm limitations and social limitations." AR 18. The ALJ, however, rejected Dr. Lichtenstein's opinions as to overall disability because it is a decision reserved to the Commissioner, and further noted that in July 2013, Ms. Traister had

a normal examination, and the treatment provider "was not interested in treating the claimant's pain." AR 18, 319.

The ALJ did not err in rejecting Dr. Lichtenstein's opinion that Ms. Traister could not work. 20 C.F.R. § 416.927(d) (no special significance must be given to opinions on issues reserved to the Commissioner). The ALJ considered the opinion as required, but determined that the evidence was not consistent with Dr. Lichtenstein's assertion that Ms. Traister was unable to work. AR 18. In support, the ALJ noted that in July 2013, another provider from Dr. Lichtenstein's office treated Ms. Traister, and reported normal ROM in her neck, and normal musculoskeletal ROM overall. AR 319. The provider further noted normal mood and affect. AR 319. Review of the record reveals similar, minimal findings during examinations: in March 2013, Dr. Lichtenstein noted Ms. Traister's chronic shoulder and arm pain was under "reasonable control on current stable regimen" (AR 323); in August 2012, although Ms. Traister reported pain, Dr. Lichtenstein found full strength and normal reflexes on examination (AR 349); she had full ROM in her neck and full pulses in her extremities in June 2012 (AR 355). Ms. Traister had other clinical visits to Dr. Lichtenstein's office in May and June of 2013 for suspected cholelithiasis (kidney stones), but no symptoms of back or shoulder pain, or depression, were reported. AR 440, 441. Thus, on balance, although Dr. Lichtenstein's chart notes reflect some pain complaints, there is little if any evidence of disabling inability to lift or carry items; travel; sustain persistence or concentration; socially interact; or adapt. As such, the ALJ's finding that Dr. Lichtenstein's findings were not supported by the objective record is specific, legitimate, and supported by substantial evidence in the record.

The ALJ additionally found that her rejection of Dr. Lichtenstein's disability opinion was supported by a chart note in which treating physician indicated she was not interested in

prescribing pain medication. AR 18, 319. Review of the record, however, reflects that it is not clear that the physician doubted Ms. Traister was in pain, or questioned whether the chronic pain medication was needed. AR 319. As such, the solitary fact that the physician declined to offer "chronic pain management" does not provide significant support for the ALJ's finding.

The ALJ also provided other valid rationales for rejecting portions of Dr. Lichtenstein's opinion in favor of other physicians of record. Moreover, the ALJ accounted for many of Dr. Lichtenstein's observations in the RFC: Ms. Traister was limited to light work with additional restrictions on the use of her right arm and hand, postural limitations, limitations regarding concentration and understanding instructions, as well as limitations regarding her exposure to the general public, co-workers, and supervisors. AR 15. Thus, although Ms. Traister maintains that Dr. Lichtenstein's chart notes indicating pain and symptoms support a disability finding, the ALJ's interpretation that Ms. Traister's health conditions limited her functionally, but did not render her disabled, was a rational interpretation of the record, and therefore the Court must affirm. *Batson*, 359 F.3d at 1193.

## CONCLUSION

Because Ms. Traister has not identified harmful error in the ALJ's assessment of her symptom allegations or the medical opinion evidence, the Commissioner's decision that Ms. Traister was not disabled from September 21, 2012 through March 12, 2015, is based on proper legal standards, and the findings are supported by substantial evidence; thus, Ms. Traister's request for remand (Dkt. 1) is DENIED. The Commissioner's decision is AFFIRMED.

DATED this 22nd day of September, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge